**AFFIRMED and Opinion Filed April 1, 2019**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-18-01161-CV
No. 05-18-01162-CV
No. 05-18-01163-CV
No. 05-18-01164-CV
No. 05-18-01165-CV
No. 05-18-01166-CV
No. 05-18-01167-CV

**IN THE INTEREST OF E.M., A CHILD**
**IN THE INTEREST OF J.F., A CHILD**
**IN THE INTEREST OF A.W. A/K/A A.U.W., A CHILD**
**IN THE INTEREST OF C.C. AND C.M.C., JR., CHILDREN**
**IN THE INTEREST OF W.M., A CHILD**
**IN THE INTEREST OF J.P., A CHILD**
**IN THE INTEREST OF C.M., A CHILD**

**On Appeal from the 254th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-03-00170-R**
**Trial Court Cause No. DF-16-27206-R**
**Trial Court Cause No. DF-17-15414-R**

**On Appeal from the 302nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-16-27181-U**
**Trial Court Cause No. DF-16-27204-U**
**Trial Court Cause No. DF-16-02192-U**

**On Appeal from the 330th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-10-13428-Y**

# MEMORANDUM OPINION

Before Justices Whitehill, Pedersen, III, and Nowell
Opinion by Justice Whitehill

After a bench trial, the trial court terminated Mother's parental rights as to eight children. Mother asserts three issues on appeal: (i) the evidence is legally and factually insufficient to support the four § 161.001(b)(1) termination grounds that the trial court found; (ii) the evidence is legally and factually insufficient to support the trial court's findings that terminating Mother's rights was in the children's best interest, and (iii) the trial court erred by appointing the Texas Department of Family and Protective Services as managing conservator of six of the children.

We overrule Mother's issues and affirm.

## I. BACKGROUND

This opinion addresses seven appeals from seven different termination cases involving a total of eight children. These are the eight children in order from oldest to youngest, along with the year in which each was born:

| | |
|---|---|
| E.M. (male) | 2002 |
| C.M. (male) | 2007 |
| J.P. (female) | 2009 |
| J.F. (female) | 2011 |
| W.M. (male) | 2012 |
| C.M.C., Jr. (male) | 2013 |
| C.C. (female) | 2014 |
| A.W. (female) | 2017 |

### A. Factual Overview

Mother was born in 1984. She had babies in 1999 and 2001. A court terminated her parental rights as to those two children in 2006, and that termination is not part of this appeal.

From 2001 through 2016, the Dallas County Child Protective Services Unit of the Texas Department of Family and Protective Services received and investigated several referrals about Mother. The referrals generally involved neglect and abuse allegations.

The events leading to the termination cases now before us began in February 2015.[1]  On February 23, 2015, the Department received a report that Mother had left her seven children (A.W. had not been born yet) with her aunt about three months earlier.  E.M. alleged that he was repeatedly left to care for his siblings and that the aunt "trie[d] to whip him and his siblings all the time."  The children were not going to school.

The Department found and met with Mother about two weeks later.  After that, the Department could not find her or the children again until June 2016 when Mother was ticketed because the children were not properly restrained in her vehicle.  Mother claimed that the children were staying with her mother until she could find a place to stay.

In September 2016, Mother took the children away from her mother's residence.  Mother told the Department in a phone call or text message that she and the children were staying in a Motel 6 off I-30 in Arlington.  In a meeting on October 7, 2016, Mother told the Department that she was still at the motel and the children were not in school.

In November 2016, Mother contacted the Department and said that the children were staying with a different aunt.  Mother did not have stable housing, and the children still were not in school.  E.M. later contacted the Department and reported that this aunt was hitting the children and that her boyfriend was using drugs in her apartment.

In December 2016, Mother made a scene at the daycare where three of her children were.  She took those children away in a car that did not have license plates or car seats.  There was trial testimony showing that the Department decided to remove the children from Mother's custody based on this incident.

---

[1] The following facts are drawn principally from a Department caseworker's affidavit that was admitted into evidence.

**B.     Procedural History**

On December 22, 2016, the Department filed six original petitions for protection, conservatorship, and termination addressing seven of the eight children involved in this appeal. (Again, A.W. had not been born yet.)  One petition addressed two children, C.C. and C.M.C., Jr. The seven children were removed before the end of 2016.

These six cases were still pending when Mother gave birth to A.W. in June 2017.  The Department filed an original petition for protection, conservatorship, and termination relating to A.W. in August 2017.  A.W. was removed from Mother's custody that same month.

All seven cases were tried together in a nonjury trial from May 22 to May 24, 2018.  On June 7, the State filed a motion to reopen the evidence, and on June 8 the trial court heard additional evidence regarding that motion.

The trial court later signed judgments terminating Mother's parental rights as to all eight children.   The judgments also terminated the children's fathers' parental rights with one exception—C.C. and C.M.C., Jr.'s father was appointed their permanent managing conservator. The Department was appointed managing conservator of the other six children.

Mother timely appealed in each case.

## II.  ANALYSIS

**A.     Issue One:   Is the evidence legally or factually insufficient to support the § 161.001(b)(1) termination grounds that the trial court found?**

Mother's first issue attacks the sufficiency of the evidence to support the § 161.001(b)(1) termination grounds that the trial court found against her.  We reject her argument, holding that the evidence was legally and factually sufficient to support the findings under § 161.001(b)(1)(N).

**1.     Standard of Review**

Because terminating parental rights implicates fundamental interests, the clear and convincing standard of proof applies in termination cases.  *In re A.B.*, 437 S.W.3d 498, 502 (Tex.

2014).  "Clear and convincing evidence" is the measure or degree of proof that will produce in the factfinder's mind a firm belief or conviction as to the truth of the matter to be proved.  FAM. § 101.007.

Our standards of review reflect the elevated burden at trial.  *In re N.T.*, 474 S.W.3d 465, 475 (Tex. App.—Dallas 2015, no pet.).  Specifically, in both legal and factual sufficiency review, we consider all the evidence.  *Id.*  Under both standards we defer to the factfinder's determinations as to witness credibility.  *Id.*

In a legal sufficiency review, we credit evidence that supports the verdict if a reasonable factfinder could have done so, and we disregard contrary evidence unless a reasonable factfinder could not have done so.  *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014).  However, we do not disregard undisputed facts that do not support the verdict.  *Id.* at 113.  Even evidence that does more than raise surmise and suspicion will not suffice unless it can produce a firm belief or conviction that the allegation is true.  *Id.*  If no reasonable factfinder could form a firm belief or conviction that the allegation is true, the evidence is legally insufficient.  *Id.*

In a factual sufficiency review, we likewise determine whether the factfinder could reasonably form a firm belief or conviction that the State's allegations are true.  *In re A.B.*, 437 S.W.3d at 502.  "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient."  *Id.* at 503 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).  We must undertake an exacting review of the entire record with a healthy regard for the constitutional interests at stake.  *Id.*  However, our review "must not be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt."  *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

## 2. Applicable Law

The trial court may terminate the parent–child relationship if the factfinder finds by clear and convincing evidence that (i) the parent committed one or more acts or omissions enumerated in Family Code § 161.001(b)(1) and (ii) termination is in the child's best interest. TEX. FAM. CODE § 161.001(b).

Here, the trial court found the predicate facts set forth in § 161.001(b)(1)(D), (E), (N), and (O) as to each child. Those subsections provide as follows:

- The parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." *Id*. § 161.001(b)(1)(D).

- The parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id*. § 161.001(b)(1)(E).

- The parent "constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and: (i) the department has made reasonable efforts to return the child to the parent; (ii) the parent has not regularly visited or maintained significant contact with the child; and (iii) the parent has demonstrated an inability to provide the child with a safe environment." *Id*. § 161.001(b)(1)(N).

- The parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." *Id*. § 161.001(b)(1)(O).

To prevail on her first issue, Mother must show that the evidence is insufficient to support the findings under all four subsections. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.") (footnote omitted) (citing previous version of § 161.001).

**3. Applying the Law to the Facts: § 161.001(b)(1)(N)**

Section 161.001(b)(1)(N) requires proof of four elements:

1.  the parent constructively abandoned the child, who has been in the Department's conservatorship for not less than six months;

2.  the Department has made reasonable efforts to return the child to the parent;

3.  the parent has not regularly visited or maintained significant contact with the child; and

4.  the parent has demonstrated an inability to provide the child with a safe environment.

FAM. § 161.001(b)(1)(N).

As to the first element, Mother does not dispute that all eight children were in the Department's conservatorship for more than six months by the time of trial. Her brief, however, contains the conclusory assertion that "by no means has she abandoned" the youngest child, A.W. She provides no record references in support. Her bald assertion does not present an argument we can review. *See* TEX. R. APP. P. 38.1(i); *In re B.A.B.*, 124 S.W.3d 417, 420 (Tex. App.—Dallas 2004, no pet.) ("The failure to adequately brief an issue, either by failing to specifically argue and analyze one's position or provide authorities and record citations, waives any error on appeal.").

Mother also does not challenge the second element, that the Department has made reasonable efforts to return the children to her.

As to the third element, that she has not regularly visited or maintained significant contact with the children, Mother makes only the conclusory assertion that she "attends her visits with A.W." She gives no supporting record references. Thus, her briefing is insufficient to present the argument. Moreover, even if this briefing were sufficient, the record refutes Mother's assertion. As the Department points out, witnesses testified that Mother missed 40% of her scheduled visits with the children from November 2017 through trial in May 2018. Moreover, the testimony indicated that half of the scheduled visits were supposed to be with A.W. alone and Mother missed

even more than 40% of those visits from January through May 2018. The trial court could reasonably have found that this was clear and convincing evidence that Mother did not regularly visit or maintain significant contact with the children after they entered the Department's care.

Finally, Mother argues that the evidence is insufficient to support the fourth element, that Mother demonstrated an inability to provide the children with a safe environment. The Family Code identifies several factors that are relevant to whether a parent is willing and able to provide a child with a safe environment:

(1)     the child's age and physical and mental vulnerabilities;

(2)     the frequency and nature of out-of-home placements;

(3)     the magnitude, frequency, and circumstances of the harm to the child;

(4)     whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5)     whether the child is fearful of living in or returning to the child's home;

(6)     the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7)     whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8)     whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9)     whether the perpetrator of the harm to the child is identified;

(10)    the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11)    the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12)    whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

   (A)    minimally adequate health and nutritional care;

> (B)    care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;
>
> (C)    guidance and supervision consistent with the child's safety;
>
> (D)    a safe physical home environment;
>
> (E)    protection from repeated exposure to violence even though the violence may not be directed at the child; and
>
> (F)    an understanding of the child's needs and capabilities; and
>
> (13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

FAM. § 263.307(b).

Here, the trial court could reasonably have concluded that there was clear and convincing evidence that Mother demonstrated an inability to provide the children with a safe environment. The evidence supports the following factors:

**Age and vulnerability**. Three children were under the age of six. The five school-aged children were very behind academically. Two children, J.F. and C.M., were in and out of behavioral hospitals after removal. Mother told the Department that C.M. and J.P. suffered from depression.

**Frequency of out-of-home placements**. Some children had multiple placements after removal. E.M., W.M., C.M.C., Jr., and C.C. each had two placements. J.F. had roughly six placements. C.M. had nine placements.

**Harm to the children and history of abusive conduct**. The children have shown signs of sexual abuse. In late 2014, the Department received a report that Mother had beaten C.M. all over his body with an extension cord. In early 2016, E.M. reported that Mother once left the children with an aunt who drank alcohol, smoked, and "trie[d] to whip him and his siblings all the time." In November 2016, E.M. reported that Mother's aunt, who was then keeping the children, hit him with a belt and with her hand. He also reported that the aunt's boyfriend did the same.

–9–

Mother points out that a Department caseworker's affidavit that was admitted into evidence states that the children did not report any abuse or neglect during several interviews in 2016. However, E.M. said on one occasion that the children's caretaker, one of Mother's aunts, had coached the other children not to "say anything to CPS about what is going on." The trial court was entitled to discount the children's denials of abuse or neglect and believe the contrary evidence.

**Evaluations of the children or the parent**. Mother testified that she was diagnosed as bipolar in 2001, 2002, and 2003. She also testified that she was cured by 2004, but the judge was entitled not to believe this testimony. *See In re N.T.*, 474 S.W.3d 465, 475 (Tex. App.—Dallas 2015, no pet.) ("[T]he appellate court must defer to the fact-finder's determinations as to witness credibility.").

Mother told the Department that C.M. and J.P. suffered from depression. She also said that E.M. has been diagnosed with ADHD.

**Family's willingness to complete counseling and facilitate agency supervision**. The trial court ordered Mother to complete counseling, but she did not complete her counseling services. On the other hand, she apparently completed all other ordered services.

Mother was not cooperative with the Department in this case. For example, she refused to provide proof of income when requested. There were periods when Mother would not return phone calls from Department personnel. She refused to respond to and cooperate with a Department caseworker. She was uncooperative with CASA. Mother admitted that she never let anyone know where she was staying until a week before trial.

**Adequate parenting skills**. There was evidence that Mother showed inadequate parenting skills. For example, in June 2016, Mother received tickets because her children were not properly restrained in her vehicle. In December 2016, she appeared at the children's daycare, made a scene,

–10–

and took the three youngest children away in a car that had no license plates or car seats. There was also evidence that the oldest child, E.M., had to be his siblings' primary caretaker. The children were not in school in February 2015, and in October and November 2016 Mother told the Department that the children were not in school. There was evidence that in July 2017 Mother and A.W. were living in a residence that had a significant roach problem.

Mother introduced testimony from various witnesses to rebut the State's case and to show that she was a good parent. However, it was the trial court's prerogative as factfinder to disbelieve her witnesses and to credit the contrary evidence introduced by the State. *See In re N.T.*, 474 S.W.3d at 475 ("[T]he appellate court must defer to the fact-finder's determinations as to witness credibility."). The trial court could reasonably conclude by clear and convincing evidence that Mother demonstrated poor parenting skills.

**4.      Conclusion**

In light of the foregoing, the trial court could reasonably find by clear and convincing evidence that the State proved § 161.001(b)(1)(N)'s elements.. Accordingly, we hold that the evidence was legally and factually sufficient to support the court's § 161.001(b)(1)(N) findings, and we overrule Mother's first issue.

**B.      Issue Two:  Is the evidence legally or factually insufficient to support the trial court's best interest findings?**

Mother's second issue argues that the trial court's best interest findings are supported by legally and factually insufficient evidence. We disagree for the reasons stated below.

We use the same standard of review detailed above under Issue One.

**1.      Applicable Law**

The trial court may terminate the parent–child relationship if the factfinder finds by clear and convincing evidence that (i) the parent committed one or more acts or omissions enumerated

in Family Code § 161.001(b)(1) and (ii) termination is in the child's best interest. FAM. § 161.001(b).

Although there is a strong presumption that maintaining the parent–child relationship serves the child's best interest, there is also a presumption that promptly and permanently placing the child in a safe environment is in the child's best interest. *In re D.W.*, 445 S.W.3d 913, 925 (Tex. App.—Dallas 2014, pet. denied).

The supreme court has identified a nonexclusive list of factors that may be relevant to a best interest determination, depending on the facts: (i) the child's desires, (ii) the child's current and future emotional and physical needs, (iii) current and future emotional and physical dangers to the child, (iv) the parental abilities of those seeking custody, (v) the programs available to help those individuals promote the child's best interest, (vi) those individuals' plans for the child, (vii) the home's or proposed placement's stability, (viii) the parent's acts or omissions indicating that the existing parent–child relationship is not a proper one, and (ix) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). An absence of evidence of some *Holley* factors does not preclude a finding that termination is in the child's best interest, particularly if undisputed evidence shows that the parental relationship endangered the child's safety. *In re N.T.*, 474 S.W.3d at 477.

The § 263.307 factors discussed above under Issue One are also relevant to a best interest analysis. *See In re C.R.*, 263 S.W.3d 368, 375 (Tex. App.—Dallas 2008, no pet.).

2. **Applying the Law to the Facts**

a. **The Children's Desires**

A child's preference should not be considered unless he or she is shown to be sufficiently mature. *In re D.W.*, 445 S.W.3d at 926. In this case, six of the eight children were under the age of ten at the time of trial, and there was no showing that the two oldest children, E.M. and C.M.,

were mature enough for their desires to be meaningful. There was evidence that C.M. has been in and out of behavioral hospitals, suggesting he lacks the necessary maturity. There was evidence that during trial E.M. suddenly expressed a desire to live with Mother even though he showed no discomfort with his current placement and living situation. But again, there was no showing that E.M. was sufficiently mature to make that decision.

We conclude that this factor is not relevant in this case.

### b. The Children's Needs and the Parent's Parental Abilities

These factors are related, so we consider them together. *Id.*

There was evidence that the children had special needs—some more than others:

- The children have shown signs of sexual abuse. They all receive therapy.

- J.F., C.M.C., Jr., and C.C. have been reported as acting out sexually.

- C.M. and J.F. have been in and out of behavioral hospitals. J.F. was taking anti-psychotic medications, and C.M. has taken similar drugs.

- According to Mother, E.M. has a learning disability, and C.M. and J.P. suffered from depression at some point. She also said that E.M. has been diagnosed with ADHD and that she believes he is bipolar.

- A daycare employee said that W.M. would dig through the trash and hide food in his pockets when he started coming to the daycare.

- When the children were removed, the five school-aged children were very behind academically. E.M. was at least two years behind.

There was also evidence that Mother's parental abilities were poor:

- She frequently left the children with various relatives. Sometimes the oldest child, E.M., was left to care for his siblings. In February 2015, the children were staying with Mother's aunt, and E.M. reported that the aunt drank alcohol, smoked, and "trie[d] to whip him and his siblings all the time." There was a gap of several months during which Mother and the children could not be located, and then Mother was found in June 2016 when she received tickets because the children were not properly restrained in her vehicle. Mother then reported that the children were staying with her mother until Mother could find a place to stay. The grandmother's house lacked running water, and minimal food was present.

–13–

- In June 2016, Mother received tickets because the children were not properly restrained in her vehicle.

- In July 2016, Mother got into a physical altercation with her boyfriend in front of her mother's house while the children were there.

- In September 2016, Mother took the children away from her mother and began staying in a Motel 6 off I-30 in Arlington, Texas. In November 2016, Mother reported that the children had begun staying with another aunt and were still not enrolled in school. A caseworker found that the aunt lived in a one-bedroom apartment. Later that month E.M. reported that the aunt hit the children and that the aunt's boyfriend "who stays with her us[ed] marijuana and cocaine."

- Mother failed to keep the school-aged children enrolled in school consistently. Specifically, the children were not in school in February 2015, and in October and November 2016 Mother told the Department that the children were not in school.

- In December 2016, Mother went to the daycare where three of the children were and made a scene by "yelling, screaming, and cussing." Then Mother took the children away in a car with no license plate or car seats.

- The Department removed the seven oldest children in December 2016. Mother gave birth to A.W. in June 2017, and a caseworker visited her apartment on June 30, 2017. Although A.W. appeared "clean and fresh," the caseworker observed roaches in the bathroom and pantry. Mother refused to cooperate with caseworker, refusing to provide the baby's name or her father's name. A.W. was removed from Mother's custody in August 2017.

- Mother testified that she was diagnosed as bipolar in 2001, 2002, and 2003. She also testified that she was cured by 2004, but the judge was entitled not to believe this testimony.

- Mother's employment history was minimal. She testified that she had a disability that began in 2005 and that she last worked in 2015. Her estranged husband testified that he had never known her to have a job. Mother testified that she received about $900 a month in social security income and that she thought this was enough to provide for all her children.

- Mother admitted that she never let anyone know where she was staying until a week before trial. She claimed that she had lived in a house owned by her father since August 2017, but the lease agreement she introduced at trial was dated May 15, 2018, backdated to commence August 2017. Additionally, a CPS employee testified that (i) there were no pictures of Mother and the children in the house and (ii) Mother told her that the home "very recently" became available to her.

–14–

- There was evidence that in 2006 Mother signed a judicial confession admitting that she had committed food stamp fraud. And she admitted at trial that she was convicted of theft at some point.

- The school-aged children were very behind academically, but their grades greatly improved after they were removed from Mother's custody.

Again, Mother introduced some testimony to show that she was a good parent. However, it was the trial court's prerogative as factfinder to disbelieve her witnesses and to credit the contrary evidence introduced by the State. *See In re N.T.*, 474 S.W.3d at 475.

Based on the foregoing, the trial court could reasonably conclude based on clear and convincing evidence that the children had substantial needs beyond those normal for their ages, Mother could not provide for those needs, and Mother's parental abilities were poor. *See In re D.D.*, No. 05-18-00793-CV, 2018 WL 6381541, at *6 (Tex. App.—Dallas Dec. 3, 2018, no pet.) (mem. op.) ("A parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs.") (internal quotations and citation omitted). These *Holley* factors support terminating Mother's parental rights.

### c. Danger to the Children

The evidence detailed in the previous section also indicates that Mother presents emotional and physical danger to the children. She was unable to care for the children and frequently left them with relatives. They were exposed to drug use, and they showed signs of sexual abuse. The school-age children were academically behind—at least two years behind in E.M.'s case. On two occasions she took the children in vehicles without proper car seats or restraints. After the seven older children were removed, Mother gave birth to A.W. and kept her in an apartment with a significant roach problem. She missed many scheduled visits with the children after they were removed.

The trial court could reasonably conclude that continuing Mother's relationship with the children would endanger them. Thus, this *Holley* factor favors termination.

–15–

### d. Programs Available to Assist the Parent

Mother was ordered to complete services such as individual counseling, drug assessment, random drug testing, and parenting classes, and she completed all of them except the individual counseling. She missed many scheduled visits with the children. She was generally uncooperative with the Department.

The trial court could reasonably conclude that this factor supported termination. *See also* FAM. § 263.307(b)(10) (one best interest factor is "the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision").

### e. Plans for the Child and Stability of the Home or Proposed Placement

We may consider these factors together. *See In re D.W.*, 445 S.W.3d at 929.

Mother moved frequently and often left her children in others' care. As factfinder, the trial court was entitled to be skeptical of the supposedly stable residence she testified about at trial.

Two children, C.M.C., Jr. and C.C., were placed with their father, who cooperated with the Department in preparing his home to receive them. Four other children had potential adoptive placements. There was uncertainty about E.M.'s and C.M.'s placements post-termination. However, the Department's inability to identify definite permanent placements for all the children is not dispositive of the children's best interest. *Id.* at 930 n.5.

The trial court could reasonably conclude that this factor supported termination or was at least neutral.

### f. Parent's Acts and Omissions Showing an Improper Parent–Child Relationship and Any Excuse for Them

We consider the last two *Holley* factors together. *See id*. at 930.

As noted, Mother missed many scheduled supervised visits with the children, which tends to show an absence of a proper parent–child relationship. *See id*. Although she offered some

vague excuses, such as transportation problems and trying to finish her counseling, she also testified, "I'm not gonna say that I had good reasons" for all the missed visits.

The other evidence detailed above regarding Mother's unstable living situation and her failing to complete her court-ordered counseling is also relevant to these factors. *See id*. (considering a variety of parental acts and omissions as relevant to these factors).

The trial court could reasonably conclude that these factors favored termination.

### 3. Conclusion

In light of the foregoing, the trial court could reasonably form a firm belief or conviction that terminating Mother's parental rights would serve the children's best interests. Accordingly, we hold that the evidence was legally and factually sufficient to support the best interest findings, and we overrule Mother's second issue.

**C.    Issue Three:  Did the trial court abuse its discretion by appointing the Department as managing conservator of six of the children?**

Mother's third issue challenges the trial court's judgments appointing the Department as managing conservator of six of the children (all of the children except C.M.C., Jr. and C.C., whose father was appointed their permanent managing conservator).

However, the judgments terminating Mother's parental rights divested her of all legal rights and duties regarding the children. FAM. § 161.206(b). We are affirming those terminations. Thus, any errors in the judgments appointing the Department as the children's conservator do not injuriously affect Mother's rights, and she lacks standing to challenge them. *In re D.D.*, 2018 WL 6381541, at \*8.

We overrule Mother's third issue.

### III.  CONCLUSION

Having overruled Mother's issues, we affirm the trial court's judgments.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE


181161F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF E.M., A CHILD

No. 05-18-01161-CV

On Appeal from the 254th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-03-00170-R.
Opinion delivered by Justice Whitehill. Justices Pedersen, III and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered April 1, 2019.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF J.F., A CHILD

No. 05-18-01162-CV

On Appeal from the 254th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-16-27206-R.
Opinion delivered by Justice Whitehill. Justices Pedersen, III and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered April 1, 2019.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF A.W. A/K/A/ A.U.W., A CHILD

No. 05-18-01163-CV

On Appeal from the 254th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-17-15414-R.
Opinion delivered by Justice Whitehill. Justices Pedersen, III and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered April 1, 2019.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF C.C. AND
C.M.C., JR., CHILDREN

No. 05-18-01164-CV

On Appeal from the 302nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DF-16-27181-U.
Opinion delivered by Justice Whitehill.
Justices Pedersen, III and Nowell
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.


Judgment entered April 1, 2019.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF W.M., A CHILD

No. 05-18-01165-CV

On Appeal from the 302nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-16-27204-U.
Opinion delivered by Justice Whitehill. Justices Pedersen, III and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered April 1, 2019.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF J.P., A CHILD

No. 05-18-01166-CV

On Appeal from the 302nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-16-02192-U.
Opinion delivered by Justice Whitehill. Justices Pedersen, III and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered April 1, 2019.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF C.M., A CHILD

No. 05-18-01167-CV

On Appeal from the 330th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-10-13428-Y.
Opinion delivered by Justice Whitehill. Justices Pedersen, III and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered April 1, 2019.